IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JASON DEVERS,

Petitioner,

vs.

ROB JEFFREYS,

Respondent.

**8:23CV188**

**MEMROANDUM AND ORDER**

This matter comes before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Jason Devers. Filing No. 1. Respondent, Rob Jeffreys, has answered and filed the relevant state court records. *See* Filing No. 15 (Answer); Filing No. 8 (State Court Records). Also before the Court are Petitioner's Motion for Production of Additional Documents, Filing No. 17; Objection and Motion to Strike Respondent's Response to Petitioner's Motion for Production of Additional Documents, Filing No. 21; and Objection and Motion to Strike Respondent's Unauthorized Surreply, Filing No. 22. For the reasons stated below, each of Petitioner's Motions and Objections will be denied.

Additionally, upon consideration of the briefing provided by both parties and application of the relevant law, the Court finds that Petitioner's remaining claim lacks merit. Accordingly, the Petition is denied, and this case is dismissed with prejudice.

# I. BACKGROUND[1]

## A. General Background

On the evening of January 5, 2018, Petitioner and Larry Goynes went to Reign Lounge, a bar and nightclub in Omaha, Nebraska. At some point during the evening, Petitioner told Goynes about a "lick" at Reign. As described by witnesses at Petitioner's trial, a "lick" is a target for a robbery. The lick turned out to be Kyle LeFlore. Shortly after midnight, while sitting in Petitioner's vehicle outside Reign, Goynes received a message that LeFlore was leaving. Goynes got out of the vehicle, and Petitioner drove away. Goynes attempted to rob LeFlore, but LeFlore fought back. Goynes shot LeFlore and stole his jewelry. Later that morning, LeFlore died from the shooting.

After the shooting, investigators suspected Goynes and Petitioner of committing the murder. Pursuant to warrants, investigators searched Petitioner's home and found controlled substances and ammunition. Investigators also found a gun connected to Petitioner and Goynes. Following the investigation, Petitioner was arrested and charged in an information with first-degree felony murder, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person.

## B. Pretrial Motions

Before trial, Petitioner attempted to take the deposition of Piya Milton, a prosecution witness. During the deposition, Milton refused to answer questions, stating that her life would be in danger if she did. Petitioner's counsel requested court

---

[1] The facts relevant to the Petition and stated in this Memorandum and Order are not in dispute. The Court's recitation of the facts is primarily drawn from the Petition, Filing No. 1; Respondent's Brief, Filing No. 16; Petitioner's Response, Filing No. 18; Respondent's Reply, Filing No. 20; and the Nebraska Supreme Court opinions in *State v. Devers*, 945 N.W.2d 470 (Neb. 2020) and *State v. Devers*, 986 N.W.2d 747 (Neb. 2023).

intervention. The state trial court ordered that counsel be appointed for Milton and permitted Petitioner to request another deposition. Rather than request another deposition, Petitioner filed a motion in limine asking the court to prevent the prosecution from calling Milton as a witness at trial. The state trial court denied the motion and again indicated that Petitioner could move to depose Milton. Petitioner did not file an additional motion.

Petitioner also moved in limine to exclude evidence of controlled substances and a firearm recovered from Petitioner's residence pursuant to a search warrant. The state trial court denied the motion with respect to the firearm, reasoning that it had to see how the evidence was introduced at trial. The prosecution argued the controlled substances were relevant to corroborating the testimony of a jailhouse informant. The state trial court took the matter under advisement.

## C. Petitioner's Trial

### *Testimony of Piya Milton*

Milton testified at trial. Milton stated that on January 5, 2018, she went to Reign with two other friends. Around 1:00 A.M. the following morning, following an altercation between Milton and another woman, a Reign security guard removed Milton from the nightclub and refused to allow Milton to collect her car keys or jacket. Goynes saw Milton, recognized her as an acquaintance, and invited her to sit in Petitioner's car. Milton testified that when she entered the car, Goynes was in the front passenger seat and Petitioner was in the driver seat.

Goynes and Milton discussed why she was kicked out of Reign and, at some point in the conversation, Goynes showed her a firearm. At approximately 1:55 A.M., Goynes

3

received a message that said, "Right now, right now," and then jumped out of Petitioner's vehicle. Petitioner then drove away with Milton still in the vehicle. Milton asked to leave but Petitioner told her she could not leave the vehicle. Petitioner moved the vehicle down the street from Reign, near a grove of trees.

Several minutes later, Milton asked that Petitioner take her back to Reign. Petitioner responded that they could not go back there. Shortly after that, Milton saw Goynes running to Petitioner's vehicle. Petitioner asked Goynes what he was able to get, and Goynes responded that LeFlore refused to give up anything, so Goynes had to shoot him. Goynes showed Petitioner three small chains that he took from LeFlore. Petitioner took one of the chains and put it on his neck. Milton did not know which chain Petitioner took but testified that one of the chains had a cross on it.

Milton again asked to be taken back to Reign but Petitioner refused. Instead, Petitioner drove to Latiba Lemon's home. Milton testified that Petitioner told Goynes to "go in there and hide something, take his clothes off and go take a bath, or something like that." Filing No. 8-4 at 8. Petitioner also told Goynes, "I'll get rid of something for you," but Milton was unsure what it was. Filing No. 8-4 at 8. Goynes got out of Petitioner's vehicle and did not return.

Petitioner then drove Milton back to Reign to retrieve her vehicle. When he dropped her off, she entered his number in her cell phone as "Pockets" because Petitioner previously identified himself as "Little Pockets." Milton could not retrieve her vehicle because of the police presence, so Petitioner picked up Milton's friends. Petitioner dropped off Milton's friends and then took Milton to Petitioner's home, where he sold her some marijuana. Petitioner then drove Milton home.

Several days later, Milton communicated with one of LeFlore's family members. The family member recorded the conversation. Several days later, an investigator interviewed Milton and Milton allowed the investigator to search her cell phone.

### Testimony of Marvin Stockdale

Marvin Stockdale was a jailhouse informant who became Petitioner's cellmate. After becoming Petitioner's cellmate, Petitioner discussed with Stockdale the incidents of January 5 and 6, 2018. Stockdale took notes of the conversations, and the notes were read to the jury. Petitioner told Stockdale that, earlier on January 5, 2018, Petitioner sold ecstasy pills to some "girls" at a gas station. Filing No. 8-4 at 9. The girls told Petitioner that they would be going to Reign later, and Petitioner told them he would be there too. When Petitioner arrived at Reign, the girls were talking to an "Army dude." Filing No. 8-4 at 9. Petitioner was offended that they were not paying attention to him, so he left Reign to find Goynes. Petitioner told Goynes "he had a lick for him" and identified the "Army dude" as the lick. Filing No. 8-4 at 9-10. Petitioner was interested in the "Army dude's" jewelry, and told Stockdale, "I just didn't think my little cousin stupid ass would kill him. I told him to shoot if he act up, but damn." Filing No. 8-4 at 10 (internal punctuation omitted).

### Testimony of Michael Sullivan

Michael Sullivan was another jailhouse informant who met Petitioner at the Douglas County Correctional Center. Sullivan testified that after about a month of being in jail with Petitioner, Petitioner told Sullivan about the charges. Sullivan guessed that police must think Petitioner was the shooter. Petitioner responded, "No. I was the driver." Filing No. 8-4 at 10. A few weeks later, Petitioner told Sullivan he was going to trial and

that the main witness was his "brother's baby's mom," because she overheard him talking about a "lick." Filing No. 8-4 at 10. Sullivan testified that he understood a "lick" to mean a robbery of a drug dealer. During their last conversation in jail, Petitioner told Sullivan, "I was selling 'X' at the club. I was walking around with baggies in my hand. I think they got me on camera. I'm pretty sure they did. They got me on camera, so they got me." Filing No. 8-4 at 10.

### Trial Evidence from the Search of Petitioner's Home

Law enforcement obtained a search warrant for Petitioner's home that authorized a search for firearms and narcotics. On January 6, 2018, while executing the search warrant, law enforcement found 9-mm and .22-caliber ammunition. Law enforcement also found synthetic marijuana, methamphetamine, and drug packaging materials. The jury was instructed that evidence of the narcotics could only be considered for the limited purpose of corroborating Stockdale's testimony.

The prosecution also presented evidence of a firearm that was linked to the murder. Chae Glass, a juvenile detention specialist at the Douglas County Youth Center, testified regarding a firearm that was found at Benson Towers. Glass and Petitioner are both uncles to two individuals identified as Kenvaughn and Shydale. On January 6, 2018, Chae saw Kenvaughn and Shydale wiping down a chrome and black handgun with a T-shirt. Chae then drove Kenvaughn and Shydale to Benson Towers. After dropping them off, Chae called 911 and requested that police pull Chae over.

Later in the day on January 6, 2018, law enforcement discovered that Kenvaughn was related to Petitioner and found a familial connection between Kenvaughn and Wendy Williams, a resident at Benson Towers. Police eventually secured a search warrant for

Williams's home to search for narcotics and firearms. During the search, law enforcement personnel found and opened a safe. Inside the safe, they found two 9-mm firearms, one of which was a 9-mm wrapped in a T-shirt. At trial, an investigator confirmed that the ammunition seized at Petitioner's home could be fired by the 9-mm wrapped in the T-shirt.

### *Verdict and Sentences*

The jury found Petitioner not guilty of possession of a deadly weapon by a prohibited person. The jury found him guilty of first-degree felony murder and use of a deadly weapon to commit a felony. The state trial court sentenced Petitioner to life imprisonment for first-degree murder and 5 to 5 years imprisonment for the use of a deadly weapon. The sentences were to run consecutively.

## D. Petitioner's Direct Appeal

Petitioner filed a timely appeal, in which he was represented by different counsel than at trial. *See* Filing No. 8-1; Filing No. 8-5 at 3. On direct appeal, Petitioner asserted that the state trial court (1) abused its discretion when it terminated the deposition of Milton and overruled his motion in limine to exclude Milton's testimony and (2) erred in admitting irrelevant and unfairly prejudicial testimony regarding the controlled substances found during a search of his home and (b) the firearm found at Benson Towers. Petitioner also asserted that the evidence was insufficient to convict him of first-degree felony murder and use of a deadly weapon because a trier of fact could not find that Petitioner knew in advance that Goynes intended to rob LeFlore or that Petitioner knew in advance that Goynes intended to use a firearm. Filing No. 8-4 at 14. Petitioner also asserted several different claims for ineffective assistance of trial counsel. Filing No. 8-4 at 15-16.

On July 10, 2020, the Nebraska Supreme Court affirmed Petitioner's convictions and sentences. *See* Filing No. 8-4. Petitioner, pro se, then moved for rehearing, *see* Filing No. 8-10, which the Nebraska Supreme Court denied, *see* Filing No. 8-1.

**E. Petitioner's State Postconviction Motion**

Devers filed a pro se verified motion for postconviction relief and a supplemental motion intended "to continue following the last page of his original POST-CONVICTION MOTION." Filing No. 8-20 at 70. In his post-conviction motion, Petitioner alleged two claims of ineffective assistance of appellate counsel relating to the dismissal of charges against Goynes, neither of which was raised on direct appeal. Petitioner argued that the charges against Goynes were dismissed for lack of evidence. Thus, according to Petitioner, he was innocent because his culpability was premised on being an aider and abettor to the shooting allegedly committed by Goynes. *See* Filing No. 8-20 at 33; *see also* Filing No. 8-20 at 72. Petitioner's argument included the assertion that, because he could not be an aider and abettor, his "conviction and sentences be set aside as void or voidable for violations of his federal constitutional rights to . . . effective assistance of counsel on appeal under the 6th and 14th Amendments." Filing No. 8-20 at 29. Petitioner's postconviction motion also argued:

> THAT defendant was substantially prejudiced by the denial of counsel and counsel free of conflict in that he was denied the opportunity to have heard and resolved the underlying issue of legal innocence. . .
>
> THAT defendant was prejudice[d] by appellate counsel's deficient performance in that defendant's claims of legal innocence was not reviewed by the Nebraska Supreme Court on his one appeal of right.

Filing No. 8-20 at 34. Petitioner also alleged prosecutorial misconduct because the prosecution failed to diligently disclose that Goynes' charges had been dismissed. Filing No. 8-20 at 51.

8

The state postconviction trial court denied Petitioner's motion. The postconviction court found an evidentiary hearing was not warranted on Petitioner's claim that "trial counsel" should have produced evidence that the charges against Goynes had been dismissed. Filing No. 8-20 at 252. The postconviction court reasoned that this allegation of ineffective assistance of trial counsel could have been raised in the direct appeal and was not, so it was procedurally barred. Filing No. 8-20 at 252. The postconviction district court did not explicitly address Petitioner's layered claim of ineffective assistance of appellate counsel. The court found that Petitioner failed to allege specifics on his prosecutorial misconduct claim. Filing No. 8-20 at 252.

Petitioner timely appealed the state postconviction district court's judgment. *See* Filing No. 8-2. On appeal, Petitioner argued that the postconviction court erred in denying him postconviction relief without an evidentiary hearing on two claims of ineffective assistance of appellate counsel related to the dismissal of charges against Goynes. *See* Filing No. 8-5 & Filing No. 8-11. On March 24, 2023, the Nebraska Supreme Court affirmed the state district court's judgment. *See* Filing No. 8-5. The Nebraska Supreme Court determined that Petitioner's claims of ineffective assistance of appellate counsel did not warrant an evidentiary hearing because the fact that Goynes' charges were dismissed did not render Petitioner "legally innocent." *See* Filing No. 8-5 at 10-11. Petitioner moved for rehearing, *see* Filing No. 8-16, which the Nebraska Supreme Court denied, *see* Filing No. 8-2.

## F. Federal Habeas Proceedings

Petitioner filed the Petition in this case, Filing No. 1, alleging three claims. After initial review, the Court dismissed Petitioner's Claim One and Claim Two because they

9

both alleged errors during state postconviction review, which are not cognizable in federal court.  *See* Filing No. 5 at 2.  Petitioner's remaining claim, Claim Three, alleges that he was denied the effective assistance of appellate counsel because appellate counsel failed to assert that trial counsel was ineffective.  Filing No. 5 at 2.

Respondent argues that Petitioner's Claim Three is procedurally defaulted because Petitioner failed to raise the basis for Claim Three in his state postconviction motion.  *See* Filing No. 16 at 22-23.  Alternatively, Respondent argues that Claim Three is without merit.  Filing No. 16 at 23.  The parties have briefed each of the issues.  Upon review of the filings of record, an evidentiary hearing is not warranted.  Petitioner's habeas claims are, therefore, fully submitted.

## II.  OVERVIEW OF APPLICABLE LAW

Three strands of federal habeas law intertwine in this case.  They are (1) exhaustion and procedural default; (2) the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court; and (3) the standard for evaluating a claim of ineffective assistance of counsel.  The Court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Petitioner's claims.

**A. Exhaustion and Procedural Default**

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B)(i) there is an absence of available State corrective process; or

>    (B)(ii) circumstances exist that render such process ineffective to
>    protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must, therefore, present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief.  In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly[2] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner.  *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts."  *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted).  Although the language need not be identical,

---

[2] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106.

"[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A credible showing of actual innocence may also allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013), but to do so a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt,'"

*Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

**B. Deferential Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d).  Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06.  Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Additionally, a federal court must presume that a factual

13

determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court."). The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so

regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

### C. The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for petitioners to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and

15

"leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

### III.  DISCUSSION

### A.  Procedural Default

Respondent argues that Claim Three is procedurally defaulted because it was not fairly presented to the state courts. In his Reply Brief, Filing No. 20, Respondent specifies that the only layered claim fairly presented in Petitioner's motion for postconviction relief regarding the dismissal of Goynes' charges was the claim regarding the failure to raise legal innocence, not the claim regarding the failure to present evidence of the dismissal of Goynes' charges. Petitioner argues that, construed liberally, his postconviction motion fairly presented his layered claim for ineffective assistance of appellate counsel. Petitioner further asserts that Respondent's argument is disingenuous because counsel for Respondent acknowledged at oral argument before the Nebraska Supreme Court that the layered claim regarding Petitioner's appellate counsel was presented to the state postconviction court. Filing No. 18 at 4.

As noted above, whether a claim was fairly presented to the state courts for consideration depends on whether "the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (quoting *Ellsworth v.*

16

*Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)). However, the requirement of fairly presenting a federal claim to state courts does not require extensive elaboration: A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal." *Id.* Nor does the claim brought in a federal habeas need to be "an exact duplicate of the one raised in the state court proceeding." *Ward v. Norris*, 577 F.3d 925, 935 (8th Cir. 2009) (internal quotation omitted). Instead, a petitioner need only "present the same legal and factual bases to the federal courts that were presented to the state courts." *Id.* Additionally, while a federal claim must not contain "significant additional facts . . . closely related claims containing an arguable factual commonality may be reviewed." *Id.* (quoting *Kenley v. Armontrout*, 937 F.2d 1298, 1302-03 (8th Cir. 1991)).

Indeed, courts in other circuits have described fair presentment in conjunction with the exhaustion doctrine as requiring the state court system to have been "presented with the same facts and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275-77 (1971)). And to be fairly presented, the claims and arguments in a federal habeas petition need not be identical, but a petitioner must give state courts a meaningful opportunity to pass upon the substance of the claims later pressed in federal court. *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir.1999).

Petitioner's postconviction motion gave the state courts a meaningful opportunity to pass upon the substance of Claim Three. As noted above, Petitioner's postconviction

17

8:23-cv-00188-JFB-PRSE    Doc # 23    Filed: 03/28/25    Page 18 of 24 - Page ID # 1033


motion included details about his theory that trial counsel was ineffective for failing to raise evidence that charges against Goynes had been dismissed. His postconviction motion also included the assertion that, because he could not be an aider and abettor, his "conviction and sentences be set aside as void or voidable for violations of his federal constitutional rights to . . . effective assistance of counsel on appeal under the 6th and 14th Amendments." Filing No. 8-20 at 29. Petitioner's postconviction motion then argued that Petitioner was prejudiced "by appellate counsel's deficient performance in that defendant's claims of legal innocence was not reviewed by the Nebraska Supreme Court on his one appeal of right." Filing No. 8-20 at 34. In other words, the basis for Petitioner's claim that appellate counsel failed to raise actual innocence was that appellate counsel failed to raise trail counsel's failure to present evidence of Goynes' dismissal. The Court therefore agrees with Petitioner and the Nebraska Supreme Court that Claim Three was fairly presented to the state courts and is not procedurally defaulted.

**B. The Merits of Claim Three Under *Strickland***

Regardless of how Petitioner characterized his claim,[3] the basis for Claim Three is that counsel should have pushed to introduce evidence of the dismissal of Goynes's charges. As noted above, the deference due to the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *See Knowles*, 556 U.S. at 123. Under the *Strickland* standard, state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. *Id. Strickland* applies equally to appellate counsel, and appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 119 (2016). To

---

[3] Some of the labels Petitioner has used include actual innocence and failure to challenge prosecutorial misconduct. *See, e.g.*, Filing No. 18 at 7.

demonstrate prejudice on account of appellate counsel's failure to raise a claim on appeal, a petitioner must show a "reasonable probability that an appeal of [the] issue would have been successful and that the result of the appeal would thereby have been different." *Pryor v. Norris*, 103 F.3d 710, 714 (8th Cir. 1997). The petitioner must show more than that the alleged error had some conceivable effect on the outcome of the proceeding. *Id.* at 713. "'Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.'" *Id.* (quoting *Strickland*, 466 U.S. at 693).

While Petitioner's arguments are thorough and well-researched, they do not show more than a conceivable effect on the outcome of the proceedings. In assessing the merits of Petitioner's claim, the Nebraska Supreme Court applied Neb. Rev. Stat. § 28-206, which states, "A person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." Based on the plain language and legislative history of § 28-206, the Nebraska Supreme Court noted that "[b]y statute, all persons involved in the commission of a crime, as aider, abettor, procurer, or the one committing the act, are considered principals." *State v. Devers*, 986 N.W.2d 747, 755 (Neb. 2023). Accordingly, "the conviction of the principal is not necessary for the conviction of an aider and abettor. In fact, to convict an aider and abettor, it is not necessary that the identity of the principal be established." *Id.* Based on these principles, the Nebraska Supreme Court concluded that there was evidence that the elements of felony murder were satisfied and "[t]here was evidence at trial that [Petitioner] arranged the robbery of LeFlore, the underlying felony." *Id.*

19

That the charges against Goynes were dropped is of no consequence so long as the prosecution showed someone committed the underlying crime. *See United States v. Borders*, 829 F.3d 558, 565 (8th Cir. 2016); *see also United States v. Mullins*, 613 F.3d 1273, 1290 (10th Cir. 2010) ("Proving beyond a reasonable doubt that a specific person is the principal is not an element of the crime of aiding and abetting. It is not even essential that the identity of the principal be established. The prosecution only need prove that the offense has been committed."). Further, a person can be guilty of aiding and abetting "even when the principal offense goes uncharged." *United States v. Slatten*, 865 F.3d 767, 794 (D.C. Cir. 2017); *see also United States v. Catalan-Roman*, 585 F.3d 453, 473 (1st Cir. 2009).

The Nebraska Supreme Court concluded that the evidence demonstrated that the underlying murder occurred and that Petitioner facilitated the robbery leading to LeFlore's murder. This conclusion required interpretation and application of state law to the facts of record, and the Nebraska Supreme Court's ruling is therefore entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Moreover, Petitioner has not shown that evidence of the dismissal of Goynes' charges would have anything other than a conceivable effect on the outcome of Petitioner's trial. The Court therefore cannot conclude that Claim Three has any merit, or that the Nebraska Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*. Accordingly, Claim Three must be dismissed on the merits.

## C. Motions to Expand the Record

Petitioner filed a Motion captioned "Motion Requesting the Production of Additional Documents Pursuant to Paragraph 4(C) of this Court's Memorandum and Order," Filing

No. 17. Petitioner also filed an Objection captioned, "Devers' Objections and Motion to Strike Respondent's Motion and Brief in Response to Devers Motion for Additional Documents and Answer to Postconviction Motion; Request that Oral Arguments are Transcribed," Filing No. 21. In both motions, Petitioner moves the Court to order that a transcript be made of the oral arguments before the Nebraska Supreme Court in Petitioner's state postconviction proceedings. *See* Filing No. 17 at 3-4; Filing No. 21 at 3. Petitioner reasons that the transcript is necessary to show that counsel for Respondent admitted to the Nebraska Supreme Court that there was no case preventing Petitioner from presenting evidence of the dismissal of Goynes' charges, and that Petitioner fairly presented Claim Three to the state courts. Filing No. 17 at 2-3.

The Court will liberally construe the motion as one to expand the record. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Williams v. Steele*, 2013 WL 5838727, at *2 (E.D. Mo. Oct. 30, 2013) (citing *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). Rule 6(a) of the *Rules Governing Section 2254 Cases in the United States District Courts* provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." "The 'good cause' that authorizes discovery under Rule 6(a) requires a showing 'that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to [habeas] relief.'" *Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (quoting *Bracy*, 520 U.S. at 909 (quotation omitted)). In contrast, a motion to expand the record is governed by Rule 7 of the *Rules Governing Section 2254 Cases in the United States District Courts*. Rule 7 permits courts to direct the parties to expand the record by submitting additional materials relating to the

petition. However, this power is permissive and granted or denied at the court's discretion.

The Court need not expand the record in this case to include a transcript of the oral arguments in *State v. Devers*, 874, 986 N.W.2d 747 (Neb. 2023). The expressly stated purpose of the requested transcript was to show that Petitioner fairly presented the substance of Claim Three in his state postconviction motion. Filing No. 17 at 3; Filing No. 21 at 3. For the reasons stated above, the Court agrees that Petitioner fairly presented the substance of Claim Three to the state court. Further, for the reasons stated above, whether Petitioner *could have* introduced evidence of Goynes' dismissal is irrelevant to the merits of Claim Three. This is true even if a transcript shows counsel for Respondent admitted that no case law prevented Petitioner from introducing such evidence. Accordingly, a transcript of the oral arguments is not necessary and Petitioner's Motion, Filing No. 17, and Objection, Filing No. 21, are denied.

### D. Objection to Respondent's Surreply

Petitioner's "Objection to and Motion to Strike Respondent's Unauthorized Surreply to Petitioner's Response to Respondent's Reply," Filing No. 22, argues that Respondent's Reply Brief, Filing No. 20, was unauthorized and improper. Petitioner argues the Reply Brief is unauthorized because it was filed without permission of the Court. However, the Court's scheduling order expressly requires Respondent to file a reply brief. Filing No. 5 at 6. Petitioner argues the Reply Brief is improper because it raises new arguments that were not presented in Respondent's initial brief, nor were they responsive to issues raised in Petitioner's brief. *See* Filing No. 22 at 9. The arguments Petitioner references are arguments about whether Claim Three was procedurally

defaulted. *See* Filing No. 22 at 8. Because the Court rejected Respondent's arguments and concluded that Claim Three was not procedurally defaulted, Petitioner is not prejudiced by the Reply Brief. Accordingly, the Objection and Motion is denied.

**H. Conclusion**

For the reasons stated, Petitioner's Claim Three is not procedurally defaulted. However, Claim Three has no merit under *Strickland*. Accordingly, the Petition must be dismissed with prejudice in its entirety.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set for in *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000). The Court has applied the appropriate standard and determined Petitioner is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that:

1.      Petitioner's Petition, Filing No. 1, is dismissed with prejudice.

2.      Petitioner's Motion for Production of Additional Documents, Filing No. 17; Objection and Motion to Strike Respondent's Response to Petitioner's Motion for Production of Additional Documents, Filing No. 21; and Objection and Motion to Strike Respondent's Unauthorized Surreply, Filing No. 22; are each denied.

3.      The Court will not issue a certificate of appealability in this matter.

4.     The Court will enter a separate judgment in accordance with this order.

Dated this 28th day of March, 2025.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

24